*In re* PROVIDENCE JOURNAL COMPANY.

DECEMBER 24, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)    *Newspapers. Discussion of Opinions of Courts. Contempt.*

While it is the right of a newspaper to discuss the opinions of the court, or criticise or question its conclusions, it may not misstate them; and when it takes up the self-assumed task of informing the public as to the decisions of the courts, it undertakes it at its peril and holds itself out to be equipped with suitable instruments for that work. Unintentional error, or ignorance of law, is no excuse.

Where a newspaper of general circulation published an editorial containing erroneous statements as to an opinion rendered by the court, after hearing, it is adjudged in contempt.

PROCEEDINGS IN CONTEMPT, on facts fully stated in opinion.

PER CURIAM. The opinion in *Supreme Council Catholic Knights of America* v. *Patrick Fitzpatrick, Jr., et al.*, 28 R. I. 486, was delivered December 17th, 1907. On the morning of December 19th, 1907, on the editorial page of the Providence Daily Journal, a newspaper of general circulation in Rhode Island and elsewhere, published by the respondent corporation, appeared the following article:

"FRATERNAL ORDERS AND INSURANCE.

"That an ordinary life insurance policy is a negotiable instrument is well recognized. All that is necessary to make it transferable is the consent of the prospective beneficiary. An opinion of the Rhode Island Supreme Court in the matter of a benefit certificate of the Catholic Knights of America sustains the right so to dispose of a fraternal insurance policy, even where such organization, through its charter and by-laws provides against transfer of the benefits to one not of blood relation to the members. The circumstances of the case as tried in an equity action are familiar in life insurance practice. A member of the order had transferred his policy, the consideration being that it be kept alive by the payment of certain defaulted and all subsequent assessments. The Court holds that the charter provision of the order, which would exclude the arrangement described, is 'fanciful and unconvincing.' It is, of course, clear that the intent of the policy, that it be devoted to the welfare of the member's family, is thus defeated. The Court, however, maintains that the higher consideration of integrity of contract should determine the issue."

As soon as this article came to the knowledge of the court it directed a citation to be issued to the Providence Journal Company requiring it to show cause why it should not be

adjudged guilty of contempt for publishing a false statement of the decision.

The respondent appeared by attorney in answer to the citation, and presented the following statement:

"The Providence Journal Company; appearing in obedience to the citation in this matter issued out of this Honorable Court on the 19th day of December, A. D. 1907, and showing cause, as commanded in said citation, why it should not be adjudged in contempt, respectfully says:

"First. It admits the publication of the Article set forth in said citation and further admits that said Article is an erroneous statement of the opinion handed down by this Court on the 17th day of December, A. D. 1907, in the cause entitled Supreme Council Catholic Knights of America *v.* Patrick Fitzpatrick, Jr., et al.

"Second. It avers, nevertheless, that the erroneous statements in said article contained were made entirely through misunderstanding and misapprehension of the language used by the court in said opinion, and not with the purpose or intent to reflect upon the Court, or upon either of the parties to said cause, nor in any other manner to embarrass or corrupt or interfere with or obstruct the due administration of justice.

"Third. It further avers that as the publisher of a newspaper it has considered it proper in the public interest to comment upon such opinions of the Court as might be expected to be interesting or instructive to its readers. In so doing it has always endeavored to state the opinions of the Court with accuracy, and in every way to manifest and inculcate respect for such opinions; and it respectfully submits that an unintentional error, made in the course of such comment, and in the absence of any indication of a purpose to reflect upon the court, or to criticise its opinion unfavorably, does not constitute an offence against the dignity of the Court, or such an interference with or embarrassment of the administration of justice as to make the respondent liable to punishment for contempt.

"Fourth. If the Court shall determine, after consideration of the foregoing, and such further information as it may re-

quire to be produced before it, that the respondent is guilty of contempt, the respondent protesting that such contempt was wholly unintentional on its part, prays that it may be permitted to purge itself thereof, and to that end submits itself to such order as to your Honors shall seem meet.

[Seal of Providence
    Journal Co.]     "PROVIDENCE JOURNAL COMPANY,

                  "by its attorneys,

                       "Edwards & Angell
                       "Walter F. Angell."

It appeared further, from admission of counsel, that the writer of the article had before him a correct copy of the opinion of the court in which the decision was stated.

The case is one of particularly flagrant carelessness in the discharge of an assumed public duty which very intimately affects the administration of justice. A newspaper has the same right to publish the truth, without malice, that is guaranteed to every citizen. It has no more warrant to publish falsehood.

The administration of justice by our courts is before the face of the people. The sessions of the courts are open to the public, and it is proper that their decisions should be known to all. To this end, in all cases of general interest, the decisions of the courts, with the reasons therefor, are delivered in writing so that they may be disseminated, and appropriations are made for printing and preserving them for future reference in similar cases.

A skilled lawyer is appointed to insure correctness in the reports.

Inasmuch as the decisions of the courts in a very large measure announce the law of the land, which all men are supposed to know and by which their rights and property are protected and their daily actions must be guided, the whole system is obstructed by a false statement of such decisions, and the people are thereby grievously wronged.

(1) It is the right of a newspaper, as of any citizen, in public

or in private, to discuss the opinions of the court, to criticise their reasoning or to question by sober argument the soundness of their conclusions, but not to misstate these conclusions.

When a newspaper takes up the task of informing the public what the decisions of courts are, it holds itself out to be equipped with suitable instruments for that work. Its agents must be intelligent and judicious as well as honest and impartial.

The task, though a very proper one for a newspaper, is self assumed, and is undertaken at the peril of the publisher. The responsibility for accurate statement increases as the agency for the dissemination of the statement becomes more efficient.

A peculiarly lamentable feature of the affair is the present inability of the respondent to comprehend its offence: 'it respectfully submits that an unintentional error, . . . does not constitute an offence . . . such as to make it liable to punishment for contempt." It relies upon the purity of its intentions. Manifestly this is no excuse. Ignorance of the law excuses no one, not even a newspaper while using its columns for the purpose of instructing its readers in the law. The effect of such instruction, if erroneous, is more than ordinarily misleading, as the first and for most unprofessional persons the final, information which the community receives of the doings of the courts is derived from the newspapers. The misstatement arose from recklessness or incompetence, and the respondent must not employ reckless or incompetent persons for such service. A blunder in this connection produces the same evil consequences as an intentional misrepresentation.

The point of law involved in the opinion referred to was of very wide application and importance. The fraternal orders of this country having benefit funds number many thousands of members, all of whom would learn with alarm that the Supreme Court of one of the States had denied their right to regulate the disposition of these funds by their fundamental law. This court can not suffer that such a misstatement should be published within its jurisdiction with impunity.

For these reasons we have thought it our duty to call the respondent to account, and now, after the respondent has been

heard, adjudge it to be guilty of contempt, of which it may purge itself by publishing this opinion, on or before the first day of January, 1908, on the editorial page of the Providence Daily Journal, where the original article appeared, and by paying the costs of this proceeding.

*Edwards & Angell,* for respondent, *Walter F. Angell,* of counsel.