DECISION
Before this Court is a motion for sanctions against the defendants for their failure to purge this Court's September 23, 1999 order of contempt. The instant case arises out of an alleged violation of the Rhode Island Access to Public Records Act, R.I.G.L. 1956 § 38-2. Jurisdiction is pursuant to G.L. 1956 § 38-2-9.
 Facts/Travel of Case
On December 16, 1998, the plaintiff, a certified fraud examiner, submitted a document request to the State pursuant to the Rhode Island Access to Public Records Act, R.I.G.L. 1956 § 38-2-3, seeking access "to examine and copy documents relating to [the State's] efforts to collect money allegedly owed to the Administrative Adjudicative Court [which were] in the possession of contractor, Municipal Collection Agency, Ltd." (December 16, 1998 letter, para. 2.) Specifically, plaintiff wished to inspect and possibly copy "any record in [the State's] possession or control in whatever medium in which a person or other entity has claimed, after receipt of a demand for payment of an alleged debt to the Administrative Adjudication Court, that such debt has been fully or partially satisfied." (December 16, 1998 letter, para. 4) The plaintiff filed a motion for preliminary injunction demanding immediate production of the documents. A hearing on the motion was held on January 6, 1999 by this Court. At the hearing, this Court agreed with the State's position that by virtue of the ongoing audit, the requested documents were not public. On April 8, 1999, after the conclusion of the audit, the plaintiff renewed his request for documents before this Court. On April 8, 1999, this Court ordered, on the motion for a preliminary injunction, that the defendants produce certain records to the plaintiff. Specifically, this Court ordered:
 "Defendants shall permit Plaintiff to inspect first generation copies of all records created and/or maintained in the process of collecting sums overdue to the Administrative Adjudication Court wherein motorists have claimed previous payment. Such first generation copies shall have redacted the names, addresses and social security numbers of the motorists claiming prior payment." (April 8, 1999 court order, para. 1 and 2)
 Although the defendants thereafter produced responsive records, they improperly redacted information in the records beyond the scope of that which was ordered. Specifically, the defendants redacted the license and summons number information in addition to the allowable names, addresses and social security numbers of the motorists claiming prior payment. On September 23, 1999, the Court adjudged the defendants in contempt of court for their failure to properly produce the court-ordered records.
The order of contempt did permit the defendants, however, to purge themselves of the contempt. Specifically, the order stated that the defendants could purge the contempt by:
 "a) delivering to Plaintiff all of the records ordered produced in the order of April 8, 1999 without redactions except those allowed by the order,
 b) delivering to Plaintiff contemporaneously with delivery of records above an affidavit executed by Court Administrator Robert Harrall which affirms, under oath, that the records accompanying the affidavit are all of the records ordered released to Plaintiff and that he knows of no other records responsive to the order of the Court which have not been provided to Plaintiff." (September 23, 1999 court order, para. 2)
This Court ordered delivery of the records to take place "on or before October 1, 1999." On October 1, 1999, defendants produced a number of documents to plaintiff, along with the requisite affidavit of Robert Harrall, who attested that to the best of his knowledge, he knew of no other records (beyond those accompanying his affidavit) which were responsive to the Court's order and which were not previously provided the plaintiff. The defendants also produced an affidavit of Michael Maznicki, the Accounts manager of MCA, Ltd., who attested that in response to the plaintiff's December 16, 1998 document request, MCA turned over to the state all of the records in its possession in which a person had claimed, after receipt of a demand for payment of an alleged debt to the Administrative Adjudicative Court, that such debt had been fully or partially satisfied.
Subsequently, in his deposition of October 29, 1999, Michael Maznicki revealed that he was in possession of certain electronic records not previously provided the plaintiff. The plaintiff moved this Court for sanctions. Several days before the hearing on plaintiff's motion for sanctions, the defendants produced the "Claire Richards Report," which they alleged was the electronic record in question. After analyzing the record, plaintiff made a second motion for sanctions on the ground that the defendants still had not complied with the order of contempt mandated by the Court. Specifically, plaintiff argued that the report was not a first generation document as required by the Court order, the report was created for the sole purpose of alleged compliance with the court order, and the report evidenced that there were documents never previously produced to the plaintiff. Although the defendants denied these allegations in their Opposition papers, they nonetheless produced several hundred more pages of documents to the plaintiff during the time period of the various hearings on Plaintiff's motions, up to and including the last hearing in May of 2000.
The plaintiff now moves for post-hearing contempt sanctions for the defendants' alleged, continual noncompliance with the Court's September 23, 1999 order of contempt. The plaintiff requests in his Memorandum that this Court find that the defendants and their agents violated the Open Records Act and that the defendants continued to violate the Act through May 2000, the date they finally produced all of the records. As a remedy, plaintiff seeks the imposition of a statutory fine of $1,000.00 and an award to the plaintiff of his attorney's fees and expenses. The defendants oppose this motion, arguing that their acts served to adequately purge the September 23, 1999 contempt order.
 Legal Standard
The plaintiff argues the appropriate test for determining whether the defendants adequately purged the contempt is whether defendants' compliance was impossible because compliance was not within the defendants' power. (Plaintiff's Memorandum at 4, citing Downing v. Zannini, 701 A.2d 1016 (RI 1997)). The plaintiff argues that compliance with a court order is not an issue of good faith; rather, it requires absolute unequivocal compliance. In fact, plaintiff argues, this Court rejected as a matter of law a claim of misunderstanding or mistake with regard to noncompliance. (Plaintiff's Memorandum at 4, citing In re Providence Journal Company, 28 R.I. 489 (1907)).
The defendants maintain that the applicable legal standard is whether the defendants acted in good faith compliance with the court order. Under the Freedom of Information Act, the adequacy of an agency's search for documents is judged by a standard of reasonableness which depends on the facts of each case. The defendants argue it is proper to apply this same standard to the instant case because the Access to Public Records Act was based upon the Freedom of Information Act. Furthermore, defendants paint the critical issue in this case as whether the agency's search was reasonably calculated to discover the requested documents, not whether relevant documents might exist. (Defendants' Memorandum at 4, citing Maynard v. Central Intelligence Agency, 986 F.2d 547 (1st Cir., 1993)).
 Civil Contempt
At issue on this motion for sanctions, is whether the defendants' acts adequately purged the September 23, 1999 order of contempt. In some jurisdictions, nothing short of substantial compliance (other than showing impossibility of compliance) will suffice to purge contempt for noncompliance with a court order. See, US v. Tenn, 925 F. Supp. 1292
(W.D.Tenn. 1995). However, "[i]t is well settled that the matter of contempt is addressed to the sound discretion of the trial justice, to be exercised in accordance with the particular facts and findings as to the extent and willfulness of respondent's contempt for the authority and dignity of the court." School Committee of North Providence v. North Providence Federation of Teachers, Local 920, 468 A.2d 272, 276 (R.I. 1983) (quoting Marek v. Marek, 119 R.I. 841, 843, 383 A.2d 1031, 1032-33 (1978), and citing Shonting v. Shonting, 118 R.I. 475, 478 374 A.2d 797, 798 (1977)).
To avoid an order of the court, an individual must demonstrate that he or she is literally unable to comply because compliance is not presently within his or her power. See, Palmigiano v. DiPrete, 700 F. Supp. 1180, 1196 (D.R.I. 1988). The burden of proving impossibility, however, is a heavy one, and mere inconvenience or annoyance is insufficient. Id. Furthermore, "[i]t is well established that willfulness need not be shown as an element of civil contempt. Nor is good faith a valid defense to a contempt charge." Rhode Island Council 94 v. State of Rhode Island,714 A.2d 584 (R.I. 1998). This Court finds, absent contrary precedent, that there is no reason why the standard for purging contempt should be any less demanding than the standard used in a finding of contempt. Therefore, this Court holds that absent impossibility, absolute compliance is needed to purge oneself of contempt.
In the present action, the defendants failed to produce all of the responsive records by October 1, 1999, as demanded in the September 23, 1999 order of contempt. It is uncontroverted that several hundred pages of responsive records were provided after October 1, 1999. Based upon her testimony, Ms. Claire Richards, counsel for the defendants, personally drove to the offices of MCA sometime during the week of April 10, 2000 to confirm for herself that all the responsive documents were produced. She found responsive records not previously provided the plaintiff in the customary place where the records were stored. This and other evidence adduced at the hearings establish that timely compliance was within defendants' power and not impossible. This Court finds that defendants failed therefore to adequately purge the September 23, 1999 order of contempt.
 Sanctions
This Court must next decide whether sanctions are appropriate for defendants' failure to timely purge the contempt. "The Court possesses the power to impose sanctions to induce the contemner to purge himself of contemptuous conduct. Sanctions for civil contempt may be sufficiently coercive to gain swift compliance." Foley v. Osborne Court Condominium,724 A.2d 436 (R.I. 1999). "Criminal contempt" punishes the contemner for acts insulting or belittling authority and dignity of court, whereas in "civil contempt" the purpose of the sanction imposed is to coerce contemner into compliance with a court order and to compensate complaining party for losses sustained. Durfee v. Ocean State Steel, Inc., 636 A.2d 698 (R.I. 1994). The purpose of civil contempt is remedial and designed to reimburse the complainant for the wrong done as a result of the noncompliance with the order. Rhode Island Council 94, supra.
In the present action, the plaintiff states on page 10 of his Memorandum that as of May 2000, all court-ordered documents were received. ("[T]he defendants continued to violate the Act through May 2000, the date they finally produced all of the records", emphasis added.) Admittedly then, a sanction would not serve to coerce the defendants into providing more records. As this is a motion for sanctions pursuant to a civil contempt, any sanction which does not serve to coerce the defendant's present or future compliance with the court order must serve to compensate the plaintiff's loss as a result of the defendants' noncompliance. This Court declines to follow the plaintiff's reasoning that it should impose a sanction to coerce the defendants' future compliance with other requests arising out of the Access to Public Records Act. An amount imposed to secure such future compliance would at best be speculative, and it is well-settled that any sanction greater in amount than necessary to compel a contemner's compliance is punitive and thus appropriate only in a criminal context.
The plaintiff suggests that this Court find that defendants and their agents violated the Open Records Act; and continued to violate the Act through May 2000, the date they finally produced all of the records. As a remedy, plaintiff seeks the imposition of a statutory fine of $1,000.00 under the Access to Public Records Act and an award to the plaintiff of his attorney's fees and expenses.
Both the statutory fine and award of attorney's fees and expenses are explicitly provided for in the Access to Public Records Act. Section38-2-9(d) of the Rhode Island General Laws provides:
 "The court shall impose a civil fine not exceeding one thousand dollars ($1,000) against a public body or official found to have committed a knowing and willful violation of this chapter, and shall award reasonable attorney fees and costs to the prevailing plaintiff." (emphasis added.)
However, as previously stated, the law of contempt governs the present motion for sanctions.
This Court does find, however, in the exercise of its discretion and in light of the specific facts of this case, an award of the plaintiff's attorney's fees and expenses resulting from this litigation to be an appropriate contempt sanction for the defendants untimeliness in purging the contempt order of September 23, 1999. This sanction serves to compensate the plaintiff for his unnecessary expense as a result of the defendants' untimely production of records and is thus appropriate as a civil contempt sanction. This Court declines to impose the statutory fine of $1,000 at this time as the issue in this proceeding differs from the "knowing and willful" violation standard required under the statute.
Counsel for plaintiff shall submit an appropriate order and a detailed statement setting forth the dates, services, time expended, and compensation sought; consistent with the last paragraph hereof.