STATE

v.

Linda M. SANTOS.

No. 84–395–C.A.

Supreme Court of Rhode Island.

Sept. 19, 1985.

Arlene Violet, Atty. Gen., Constance Messore, Edward O. Boucher, Spec. Asst. Attys. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

Before BEVILACQUA, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

KELLEHER, Justice.

The central question presented for our review in this appeal concerns the validity of the Superior Court's common practice of allowing the senior principal deputy clerk of the Superior Court criminal division to issue arrest warrants over his own signature for the apprehension of defendants who have not paid required court costs or fines. The defendant, Linda Santos (Santos), challenges a warrant so issued for her arrest and seeks to have vacated the decision of a Superior Court trial justice adjudging her a probation violator. We reverse that portion of the Superior Court judgment. We shall here attempt to untangle the convoluted facts and travel of this case.

On June 5, 1981, Santos pleaded nolo contendere to charges of welfare fraud and failure to report income. She was placed on probation for one year and ordered to make restitution by paying $1,300. In addition, Santos was required by statute to pay court costs of $60.[1]

1. See G.L. 1956 (1981 Reenactment) chapter 25 of title 12, the Criminal Injuries Compensation Act of 1972.

Normally, when a defendant does not pay court costs at the time of sentencing, he or she signs a form, prepared by the Superior Court clerk's office, agreeing to pay the amount by a certain date. If payment has not been completed on that date, a final notice is sent to the defendant. Thereafter, if payment has still not been received, a so-called clerk's warrant is issued for the arrest of the recalcitrant defendant.

The issuance of a clerk's warrant is treated as an administrative function of the senior principal deputy clerk of the Superior Court criminal division. The procedure originated five years ago in response to the Daily Criminal Calendar congestion caused by the large number of delinquent-payment cases requiring the attention of the judge assigned to that calendar. The procedure for delinquent cost collection then in use provided for the defendant to be sent a notice to appear in court on a certain date. If the defendant failed to appear, the judge would then issue a bench warrant for his or her arrest.

In an effort to process these cases more efficiently, the Presiding Justice of the Superior Court, in conjunction with the trial justice then responsible for the Daily Criminal Calendar, decided that once two warning notices had been sent to a nonpaying defendant with no response or payments by the defendant, the senior principal deputy clerk would issue an arrest warrant "administratively" over his or her own signature without any further notification to the defendant. No judge individually authorizes or reviews a clerk's warrant. The clerk's warrant is then recorded at the Bureau of Criminal Identification (BCI) and is generally executed only if a defendant is otherwise detained or investigated on another matter and a routine check of his or her criminal history is made by BCI. The warrant is canceled if the amount due is at any time paid in full or if the defendant contacts the clerk's office in some manner. It should be noted at this juncture that the issuance of a clerk's warrant is a purely discretionary action. If the clerk's office has knowledge of the defendant or of some mitigating circumstances, or if the probation department requests that no warrant issue, the clerk's office generally will not issue a warrant.

In this case, a clerk's warrant had been issued in June of 1981, just ten days after Santos had been placed on probation. The clerk's reporting form states that this action was taken because Santos had failed to sign the Superior Court form agreeing to pay the costs. Apparently, no warnings were issued to her and no attempt was made to execute the warrant even though her address remained constant during the period in question.

Almost a year later, on May 4, 1982, Santos's probation counselor filed a report with the Office of the Attorney General in which it was noted that Santos had failed to complete restitution payments. The probation counselor also requested that a warrant for Santos's arrest be issued. The attorney general's office records indicate that the request was received in early July of 1982. In accordance with the practice of the clerk's office, no new warrant was issued because the clerk's warrant was then outstanding.

The course of events from July 1982 to January 1983 is unclear. However, sometime during this period Santos received a notice from the attorney general's department informing her that she was the subject of an outstanding-arrest warrant. She appeared in court voluntarily on February 28, 1983, at which time the warrant was canceled. Santos was informed at this time that pursuant to the request of her probation officer, she would be presented as a probation violator in accordance with Rule 32(f) of the Superior Court Rules of Criminal Procedure once the attorney general's department completed the necessary paper work.

A violation report was filed on March 10, 1983, which set forth as grounds for violation a new charge of welfare fraud and an allegation that Santos had failed to comply

with the court-ordered restitution payments of $1,300 on the 1981 charge. On April 15, 1983, the new welfare-fraud charge ripened into an indictment. After various continuances, Santos pleaded nolo contendere to the new welfare-fraud charge on January 16, 1984, and was sentenced to a five-year prison term, three months to serve with execution of the balance of the term suspended. Santos was placed on probation during the period of the suspended term. Restitution of $10,000 was also ordered. Santos's 1984 plea was adjudged to be an admission that she had violated the terms of her earlier probation, and she was then placed on probation for another year. However, execution of the sentence was stayed on Santos's motion pending this appeal.[2]

In her appeal, Santos concedes that the 1984 nolo plea might be considered as an admission that she violated the terms of her 1981 probationary status. She insists, however, that once the one-year 1981 probationary period had expired, the state could no longer prosecute her as a probation violator. The state counters this contention with case law from other states, that a defendant on probation may be violated within a reasonable time after the probation has ended. Alternatively, the state contends that the clerk's warrant issued on June 15, 1981, well within the one-year probation, tolled the running of the period of limitations. Santos, on the other hand, maintains, as we have noted earlier, that violation proceedings must be commenced before the end of the probation and relies on our decision in *State v. Taylor*, 111 R.I. 653, 306 A.2d 173 (1973), arguing that a clerk's warrant is invalid because it is not issued by a judicial officer and therefore such a "warrant" cannot suspend the probation-limitations period. We agree.

██ We commence our discussion of these issues by rejecting the state's contention that it has an absolute right to violate a defendant on probation within a reasonable time after probation has ended. Were this true, a period of probation, insofar as it connotes the time during which a defendant is at risk for a given charge, would be virtually meaningless. A probation placement of one year means exactly that and cannot be read expansively to mean "one year plus a reasonable time period thereafter."

In *State v. Taylor* we addressed the timeliness issue in the deferred-sentence context. We held that the issuance of an unexecuted capias before a defendant has completed a deferred sentence tolls the running of the limitations period provided the state has met its obligation to make a "bona fide effort" to serve the accused. If no action is taken or a diligent effort to serve the defendant is not made, the state is barred from bringing violation charges after the limitations period has run. Even though *Taylor* was concerned with a deferred sentence, we are persuaded that the same rule should apply in the probation context. Our reasoning in *Taylor* is equally applicable in this case.

"The purpose of the time limitation in which a sentence can be imposed is to assure a defendant that once his sentence is deferred, he will not have the threat of imprisonment for this offense hanging over his head for the rest of his life." *Id.* at 655, 306 A.2d at 175.

Our inquiry now focuses on whether or not the issuance of the clerk's warrant in this case tolled the running of Santos's probationary period, enabling the state to present her as a probation violator almost one year after she had completed probation.

Provisions for the issuance of arrest warrants are found in both the General Laws

---

**2.** It should be noted that the criminal face sheet found in the 1981 criminal information file bears the notation, "Aug. 4, 1983 Costs paid in full." The inside cover of the docket also states this information. Thus, Santos's initial failure to pay costs played no part in her eventual probation-violation adjudication. °

and the Superior Court Rules of Criminal Procedure. After reviewing the pertinent provisions, it has become clear to us that court clerks are not authorized either by statute or by rule to issue warrants.

Chapter 6 of title 12 of General Laws 1956 (1981 Reenactment), entitled "Warrants for Arrest," empowers "any judge of the district court, or * * * any justice of the peace authorized to issue warrants" to hear a complaint (§ 12–6–1) and mandates that the "judge or justice of the peace, if in his opinion there is probable cause to believe that an offense has been committed and that defendant has committed it, shall forthwith issue his warrant" (§ 12–6–4). Chapter 4 of title 12, "Recognizance to Keep the Peace," contains virtually identical language. Finally, chapter 10 of title 12 governs the authority of justices of the peace to issue warrants.[3] *See also* Reporter's Notes following Super.R.Crim.P. 3.

Paralleling these provisions, Super.R. Crim.P. 3 provides that a complaint setting forth an offense should be made upon oath "before a judge of the District Court or an officer empowered to issue warrants," and Rule 4 empowers the same individuals to issue the warrant that must be signed by the "judicial officer issuing it." Rule 4(b)(1). The procedure to be followed for issuance of a warrant or summons upon indictment or information found in Rule 9 states that "the court shall issue a warrant" upon the request of the attorney general and that "the clerk shall issue a summons instead of a warrant upon the request of the attorney for the State or by direction of the court." The rule further provides that the warrant shall be "signed by either the court, or the clerk or his deputy." We cannot read into any of the above-quoted language the authority for clerks to issue arrest warrants administratively.

Accordingly, the practice of allowing Superior Court clerks to issue administrative arrest warrants violates both statutory law and Superior Court rule. The warrant so issued for Santos's arrest was invalid and could not toll the running of the probationary period as required by *Taylor.* Santos was therefore improperly presented as a probation violator.

Santos's appeal is granted, that portion of the judgment of the Superior Court trial justice adjudging her a probation violator is vacated, and the case [4] is remanded to the Superior Court.

The Chief Justice participated in the oral argument and in the decision of the court, but he did not participate in the publication of the formal opinion.

---

**3.** Justices of the Supreme and Superior Courts are authorized to issue warrants by § 8–3–6.

**4.** The factual background relative to the origination of clerk's warrants was derived from the agreed statement of facts submitted by the parties. After publication of this opinion, the Presiding Justice informed the author that he did not authorize the issuance of the so-called clerk's warrants referred to in this opinion.