James **FOLEY**

v.

**OSBORNE COURT CONDOMINIUM**
et al.

No. 97–522–Appeal.

Supreme Court of Rhode Island.

Feb. 11, 1999.

---

Joseph F. Hook, William P, Tocco, III, Keven A. McKenna, Providence, for plaintiff.

Mark H. Burnham, Turner C. Scott, Newport, for defendant.

Before WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of James Foley (plaintiff), from a Superior Court judgment in favor of the following defendants: Osborne Court Condominium (Osborne Court), Osborne Court Condominium Association (condominium association), Osborne Court Management Committee (management committee), individual condominium unit owners Robert Johnson, Richard Anderson, Patricia Mitchell, Douglas Powers, Sylvester Sylvia, and attorney Turner C. Scott (collectively, defendants). The Superior Court denied the plaintiff's request for an injunction barring the defendants from levying any fines against the plaintiff, filing any lien against the plaintiff predicated on any levied fines, foreclosing upon any lien predicated on any levied fines, and enforcing any unconstitutional rule or regulation. We remand this case to the Superior Court for findings on whether the plaintiff's constitutional rights in this case were violated by the provisions of the 1982 Condominium Act that authorize a condominium association to foreclose on property without the necessity of a judicial proceeding.

### Facts and Procedural History

On February 18, 1981, plaintiff and his then-wife, Lyle Pierstorff Foley [1] filed a declaration to create the condominium association in Newport, Rhode Island. Until 1988, plaintiff owned three of the eight units that comprised Osborne Court. In 1988, plaintiff sold one of his units, but continued to rent the remaining two units as an absentee land-

---

1. The Foleys divorced in 1984. Lyle Pierstorff Foley has no interest in, and is not a party to, this litigation.

lord. His tenants became the source of repeated complaints from the owners of other units at Osborne Court. In the summer of 1994, for example, the condominium association was notified by its chair, Robert Johnson, that police had been called to one of plaintiff's units on three successive weekends to investigate complaints of excessive noise. As a result of the increasing problems at Osborne Court, a guard was hired to patrol the grounds on Friday and Saturday nights.

On April 9, 1995, in anticipation of the summer season, the committee adopted a set of rules and regulations with the hope of forestalling problems in the upcoming summer. The rules and regulations allowed the management committee to assess fines for violations of the new policies after providing notice to the offending unit owner and a hearing before the committee. Despite the new rules, plaintiff's tenants continued to cause problems at Osborne Court. The management committee contacted plaintiff to alert him of his tenants' violations. After plaintiff was provided with notice and an opportunity to be heard, and he did not appear, the committee found that plaintiff's tenants had engaged in disruptive behavior that violated rules and regulations of the condominium association, for which fines were assessed. The management committee found plaintiff responsible for payment of the fines. On July 9, 1995, the committee fined plaintiff for ten violations attributable to his tenants. After it became clear that plaintiff did not intend to pay the fines, the management committee notified him that the fines constituted liens on his property. The liens were filed on August 17, 1995, September 21, 1995, and October 30, 1995.

In a letter dated October 22, 1995, the management committee informed plaintiff that it planned to hold a hearing on December 9, 1995, on the imposition of fines for new violations of the rules and regulations by plaintiff's tenants. The plaintiff did not attend the hearing, and the fines were imposed. Again, plaintiff did not pay the fines, and on February 13, 1996, the management committee recorded liens on plaintiff's units. A foreclosure sale to satisfy the liens was scheduled for March 8, 1996, but was avoided at the last minute when plaintiff relented and paid $10,466.28 in accumulated fines and other costs to Osborne Court. Although as part of the settlement plaintiff promised to appoint an agent to receive service and manage the units in his absence, there is no evidence in the record to indicate that he implemented this promise, despite defendants having reminded him to do so in writing.

The plaintiff's tenants continued to be the source of complaints from other unit owners. The committee advised plaintiff of the infractions and notified him that a management committee meeting was scheduled for June 8, 1996. The committee met and imposed fines on plaintiff, which he did not pay. The unpaid fines resulted in the filing of lien notices, and another foreclosure was scheduled for July 29, 1996. On July 25, 1996, however, plaintiff filed a complaint in the Superior Court seeking an injunction barring the committee from foreclosing on his units. Additionally, he sought a declaration that the management committee was without authority and its actions unauthorized, and that certain rules and regulations of the association were invalid. The plaintiff also requested the return of funds paid, attorney's fees, and damages, and he alleged slander of title. The defendants filed a counterclaim alleging slander and abuse of process and that: (1) plaintiff's suit was frivolous; (2) the prosecution was malicious; and (3) rules and regulations had been violated. The defendants demanded compensatory damages, punitive damages, interest, costs, special assessments, and attorneys fees.

The Superior Court granted a temporary restraining order on July 29, 1996, staying the foreclosure of plaintiffs property, and scheduled a hearing on plaintiff's request for a preliminary injunction for September 20, 1996. This hearing, however, was continued on at least six occasions until May 9, 1997, on which date the hearing began but was continued one last time to May 15, 1997.

On that date, the trial justice rendered a bench decision at the close of the evidence, denying plaintiffs prayer for a preliminary or

permanent injunction.[2] Judgment entered on June 30, 1997, and plaintiff filed a timely notice of appeal in which he challenged the 1982 Rhode Island Condominium Act, G.L. 1956 chapter 36.1 of title 34, and raised a number of issues that essentially fall into two categories: first, the correct application of the 1982 act; and second, the constitutionality of various provisions of that act.

## Standard of Review

 It is well settled that the "findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Technology Investors v. Town of Westerly,* 689 A.2d 1060, 1062 (R.I.1997). In civil cases, as in criminal cases, we "review *de novo* legal questions and mixed questions of law and fact insofar as those issues impact on constitutional matters, pursuant to *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)." *State v. Campbell,* 691 A.2d 564, 569 (R.I.1997) (setting forth the standard of review in criminal cases).

## Application of the Rhode Island Condominium Act

The Rhode Island Condominium Act was adopted in 1982 (1982 act) and was made applicable to any condominium created in Rhode Island after July 1, 1982. Section 34–36.1–1.02(a)(1). Because Osborne Court was created in February of 1982, it would not be subject to the provisions of the 1982 act. The 1982 act does, however, include a provision allowing condominia created before July 1, 1982, voluntarily to accept the provisions of the 1982 act, *id.,* but the association took no action to do so. Nevertheless, certain provisions of the act apply retroactively, as long as the provisions of the 1982 act do "not invalidate existing provisions" of the declarations, bylaws, plats, or plans of those condominiums.[3] Section 34–36.1–1.02(a)(2) and (a)(4). Section 34–36.1–1.02(a)(2) applies to condomi-

nia created before July 1, 1982 with respect to events and circumstances occurring after July 1, 1982. Section 34–36 .1–1.02(a)(4) applies to all condominia created before June 1991 with respect to events and circumstances occurring after June 18, 1991. Because Osborne Court was created before July 1, 1982, and all of the events in question occurred after June 18, 1991, both of these sections of the 1982 act apply retroactively, unless these provisions invalidate any of the association's bylaws.

Article V, Section 1(D) of the bylaws of the condominium association states that

"failure to comply [with the rules and regulations of the association] shall be grounds for an *action* to recover sums due for damages or injunctive relief or both ***.

Each Unit Owner does hereby agree that if and when in default hereunder he will pay all costs and expenses of any such suit or proceeding and that the court is to assess such sum and reasonable attorney's fees against such defaulting Unit Owner, and if the court should render any judgment therefor, that the Management Committee, or any duly authorized officer, of the Committee may prepare a written instrument of such costs, expenses and attorney's fees and record the same in the office of the Recorder of Deeds of the City of Newport, Rhode Island, and the same shall constitute a lien as herein defined, which said lien shall enjoy the same priority and be foreclosed in the same manner as provided for collection of common expenses." (Emphasis added.)

Section 1(C) of Article V of the bylaws sets forth the procedure for foreclosing on a lien for nonpayment of common expenses, stating that the lien

"may be enforced by sale or foreclosure of the Unit Owner's interest by the Management Committee, such sale or foreclosure to be conducted in accordance with the provisions of law applicable to the exercise of statutory powers of sale or foreclosure

---

**2.** The trial justice merged plaintiff's requests for a preliminary and a permanent injunction, and did not rule on the counterclaim for abuse of process, finding that it was not ripe.

**3.** The plaintiff has not argued that any provisions of 1982 act invalidate the declaration, plats, or plan of the association, but has challenged application of that act to the bylaws of the association.

in deeds of trust or mortgages or in any manner permitted by law."

Section 34–36.1–3.21 of the 1982 act sets forth a procedure for foreclosure of condominium liens that does not require bringing a court action of any sort. Instead, a condominium association may "sell the unit of any defaulting unit owner and the benefit and equity of redemption of the defaulting unit owner and his or her heirs, executors, administrators, and assigns therein, at public auction." Section 34–36.1–3.21(a)(1). The plaintiff interpreted the word "action" in Article V, Section 1(D) of the bylaws, see *ante,* as requiring a judicial proceeding. He further argued that allowing nonjudicial foreclosure at Osborne Court pursuant to this procedure would invalidate the association's bylaws, and therefore the 1982 act, was inapplicable, as directed by § 34–36.1–1.02(a)(4).

The trial justice denied plaintiff's request for a preliminary injunction as to the foreclosure after finding that the 1982 act did not invalidate Article V, Section 1(D) of the bylaws of the association because that section did not provide an exclusive remedy for foreclosing on a unit.

"To give the statute as worded, any weight, at all, as it relates to condominiums created in this State prior to June 19, 1991, it would seem that the foreclosure provisions would apply so long as the bylaws didn't previously, specifically state that the provisions set forth were the only and exclusive provisions."

The section of the bylaws at issue does not contain any such restrictive terms. The trial justice therefore determined that the 1982 act merely provided "an alternative, an easier method, shortcut for achieving the same result of lien and foreclosure. It doesn't preclude the Management Committee from following the old rule, the old provision," namely, Article V, Section 1(D). Therefore, the trial justice ruled, "the foreclosure provision contained in the Rhode Island Condominium Act applies to the subject units," and she denied the motion for a preliminary injunction, after finding that there was no likelihood of success on the merits.

## Constitutionality of the Rhode Island Condominium Act

Several of plaintiff's arguments on appeal challenged the constitutionality of the 1982 act and, in particular, plaintiff argued that the actions of the committee taken pursuant to provisions in the 1982 act were illegal because they stemmed from an improper delegation of the Rhode Island Constitution, article 10, Judicial Power to a private entity. The plaintiff also argued that his contract rights were violated, and that certain provisions of the 1982 act were fundamentally unfair. The plaintiff's constitutional claims therefore implicated either his contractual rights or a theory of improper delegation of authority to a private entity.

### A. *Waiver of Constitutional Claims*

The defendants contended on appeal that while the record was not totally devoid of any mention of plaintiff's constitutional issues, these issues were not properly raised, because they were only "briefly" mentioned in plaintiff's opening statement, without citation to any authority, and without further reference to those issues even in closing argument. A close review of the record, however, does not support these assertions, and plaintiff disputed the allegation that he waived his constitutional claims.

"Rule 16(a) of the Supreme Court Rules of Appellate Procedure provides that issues not briefed will be deemed waived." *Superior Group Ventures, Inc. v. Apollo II Sign Corp.,* 712 A.2d 359, 360 (R.I.1998). Moreover, this Court will not consider a claim that, "although briefed and argued at the appellate level, *** [was] not effectively raised at trial." *State v. Rupert,* 649 A.2d 1013, 1015 (R.I.1994). In *Rhode Island Hospital Trust National Bank v. de Beru,* 553 A.2d 544, 547 (R.I.1989), we held that "[e]ven constitutional questions will not be considered by the Supreme Court if they have not been properly raised in the trial court *in such a manner as to allow the trial justice an opportunity to pass on them.*" (Emphasis added.) The key issues, therefore, are whether plaintiff raised his constitutional arguments in a manner that provided a reasonable opportunity for con-

sideration by the trial justice, and whether he briefed his constitutional arguments for review by this Court. Having carefully evaluated the record, we have determined that although plaintiff failed to brief and argue his claim of unconstitutional interference with his contract rights, he did brief and argue his claim of an unconstitutional delegation of power to a private entity.

### 1. *Contract Claim*

■ In his original complaint, plaintiff characterized his action, in part, as an action for damages for interference with contract rights, and he alleged that defendants "acted to deny, to harm, to interfere with the plaintiffs' [*sic*] contract and property rights secured under the Constitutions of the United States, [and] of the State of Rhode Island." The plaintiff thus clearly presented a claim of unconstitutional interference with contract rights in his complaint.

At trial, however, plaintiff seemed to switch focus. In his opening statement, he argued at some length that the 1982 act allowed an unconstitutional delegation of police power to the committee, a private entity. At the very end of his opening statement, plaintiff made a brief reference to the fact that the 1982 act was not intended to abrogate contractual rights, but did not offer any argument that the act did in fact abrogate his rights. Thereafter, plaintiff raised no further contract claims. At closing argument, plaintiff argued that the power to impose fines was restricted to the government and that the 1982 act contravened the association's bylaws "wrongfully." The plaintiff therefore only weakly referenced his claim of unconstitutional interference with contract rights at trial. Thus, the claim of unconstitutional interference with contract rights was not presented to the trial justice in a manner that would have allowed the trial justice to pass upon it as required by *de Beru*.

Even if plaintiff had properly presented the issue to the trial justice, his claim of a violation of his contractual rights would still be unreviewable because he failed to brief the issue on appeal to this Court. The plaintiff first outlined the issues on appeal, including a claim that retroactive application of the 1982 act violated his "substantive rights." He did not, however, explicitly characterize this issue as a constitutional claim of impairment of his contract rights.[4] No mention of interference with *contractual* rights was made in the Errors Claimed section, however. The plaintiff then listed the "Questions Presented," three of which appeared to raise constitutional issues, the first, whether the process used by the committee was "fundamentally unfair," and the second and third, addressing the claim of unconstitutional delegation of judicial power or police powers to private entities. Therefore, in both the Errors Claimed and the Questions Presented sections, plaintiff failed to raise the claim of interference with contractual rights. Additionally, plaintiff's brief chiefly argued the improper delegation of power to a private entity.

In his reply brief, plaintiff asserted that the issue of the derogation of his contractual rights was "implicitly" raised through references to the retroactive application of the 1982 act. That posture is undermined, however, by the fact that in his original brief, plaintiff's references to the retroactive application of the 1982 act were limited to nonconstitutional arguments. Further, plaintiff presented these nonconstitutional arguments as distinct from his *constitutional* arguments regarding the improper delegation of powers to a private entity. Considering his brief to this Court as a whole, it is clear that plaintiff failed to properly raise a claim of impairment of contract rights.

Therefore, we conclude that plaintiff waived the argument that his contract rights were impaired by retroactive application of the 1982 act.

---

4. The plaintiff stated: "Specifically, the additions in the 1982 Condominium Act that authorize Condominium Associations to impose fines and enforce fines without any preceding judicial action, violate substantive rights of the Appellant, obtained under the Condominium Ownership Act, Title 34 Chapter 36 of the Rhode Island General Laws, the Condominium Declaration and the By-Laws of the Osborne Court Condominium."

### 2. *Improper Delegation Claim*

The plaintiff argued on appeal that the actions taken by the committee pursuant to provisions in the 1982 act were illegal because they stemmed from an improper delegation of article 10 judicial power to a private entity. R.I. Const., art. 10. As noted *ante*, the key requisites for our review are whether plaintiff raised his improper delegation argument in a manner that provided the trial justice with a reasonable opportunity to consider it, and if so, whether plaintiff briefed his improper delegation argument for review by this Court. We are of the opinion that plaintiff properly presented his claim that there was an unconstitutional delegation of power to a private entity.

Although plaintiff failed to outline this argument in his complaint, he repeatedly raised the issue at trial without any objection that this claim exceeded the scope of the complaint. In his opening statement, plaintiff argued at length—again without objection—that the 1982 act allowed an unconstitutional delegation of police power to the committee, a private entity. At closing argument, plaintiff presented the trial justice with a New Jersey Superior Court case in support of his argument that the power to impose fines is "strictly a governmental *** power." The plaintiff delivered this case, along with two others, to the trial justice for her perusal. It is therefore apparent from our review of the record that plaintiff did present this issue to the trial justice in a manner that would have allowed the trial justice to pass upon it and that it was not objected to or excluded as beyond the scope of the complaint. The trial justice, however, subsequently issued a bench decision and judgment that failed to rule on plaintiff's argument that the 1982 act unconstitutionally delegated judicial power.

Consequently, we remand this case to the Superior Court with our instruction that the trial justice consider and rule on whether in this case the 1982 act represents an unconstitutional delegation of judicial or police power to the condominium association, a private entity. If the trial justice finds that the delegation is unconstitutional, then within the time permitted for appeals, the defendants may seek appellate review of the trial justice's ruling; alternatively, as a consequence of the trial justice's ruling, the defendants may bring "an action to recover sums due for damages or injunctive relief or both" in accordance with the condominium association's bylaws. If the delegation is found to be constitutional, the trial justice must then find whether any conflicts between the provisions of the 1982 act significantly modify the relation between an owner and an association where, as here, the bylaws provided for a judicial procedure prior to foreclosure. If the trial justice finds no conflict and affirms the previous judgment, the plaintiff may seek review of the ruling. If the trial justice finds such a conflict, the defendants may appeal pursuant to the rules of appellate procedure.