**STATE**

v.

**Russell WIGGINS.**

No. 2006–112–C.A.

Supreme Court of Rhode Island.

April 20, 2007.

Christopher R. Bush, for Petitioner.

Steven D. DiLibero, Providence, for Respondent.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, Russell Wiggins, appeals from a Superior Court judgment revoking his probation and ordering that he serve five of the seven and a half years remaining on his previously suspended sentence. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Procedural History

When Russell Wiggins appeared in Newport County Superior Court for a probation revocation hearing on August 9, 2005, the odds were not in his favor. The thirty-seven-year-old had a prodigious criminal record, spanning his entire adult life and consisting primarily of drug and assault convictions. Of most immediate significance to Mr. Wiggins was a 2001 conviction for possession of a controlled substance for which he received a sentence of ten years, with thirty months to serve at the Adult Correctional Institutions, and ninety months suspended, with probation. Mr. Wiggins undoubtedly was cognizant of the bleak prospects awaiting him as he was led into the courtroom that morning. He now stood accused of violating the conditions of his probation by allegedly assaulting his girlfriend with whom he shared an apartment. He also faced a misdemeanor charge of simple assault in District Court for the same incident.

Although fortune clearly did not smile upon Mr. Wiggins that day, she may have at least smirked. As a result of the fortuitous conjunction of a reluctant witness and a persistent attorney, he was able to negotiate a plea agreement with the state, to which the hearing justice acquiesced: Mr. Wiggins agreed to admit to violating the terms of his probation and also to plead to the new assault charge in District Court, in exchange for which he would serve just six months of his suspended sentence.

The hearing justice, after assuring himself on the record that Mr. Wiggins understood he was giving up his rights to a hearing and to appeal an adverse decision, said that he would accept defendant's admission. The hearing justice then noted that Mr. Wiggins's plea in District Court was "a condition of this agreement" and remarked, "I think you better go downstairs and take care of that first." Nevertheless, he pronounced that "defendant is sentenced on the violation * * * to six months to serve." Shortly thereafter, whatever modicum of good fortune Mr. Wiggins may have enjoyed abruptly ran out.

At the conclusion of the hearing, Mr. Wiggins inquired, "Is there a no contact order in effect?" When advised by the hearing justice that there was indeed a no-contact order "on the domestic assault charge," Mr. Wiggins retorted, "When will it come off?" The hearing justice's reaction was swift and seemingly intemperate: "Take him back. I vacate the admission. It is not voluntary. Take him back to the cellblock. Hearing at 2:00." [1]

The afternoon proceedings can be recounted very briefly. The state called Mr. Wiggins's girlfriend, the alleged assault victim, as a witness. After answering some introductory questions, she expressed a desire to speak to an attorney. The hearing justice allowed her to speak with a public defender, after which she invoked her Fifth Amendment privilege and declined to testify.[2] A Newport police

---

**1.** We recognize that the atmosphere and tension of a courtroom cannot be conveyed through a cold transcript. Both the hearing justice and prosecutor subsequently indicated that Mr. Wiggins had been making faces, and the trial justice clearly interpreted his questions "as if he couldn't wait, couldn't wait to continue the error of his ways * * *." Given the volatile nature of the proceedings and the "conditional" nature of the agreement, however, we cannot help but think that continu-ing the hearing to a later date would have been a preferable course of action.

**2.** The Fifth Amendment to the United States Constitution says, in part: "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." Although a probation hearing is civil in nature, it is well settled that "[t]he Fifth Amendment privilege against self-incrimination 'may properly be invoked in a civil proceeding regardless of whether there is a pending criminal matter

officer who had responded to defendant's apartment on the night of his girlfriend's complaint testified that Mr. Wiggins's girlfriend appeared to be upset and disheveled when he located her at a nearby pay phone. The officer added that she "said she was attacked by her boyfriend who she later identified as Russell Wiggins * * *." He also remarked that he had observed a slight mark on her forehead and a small cut on her thumb at that time. After entertaining arguments from both parties, the hearing justice said that he was "reasonably satisfied that [Mr. Wiggins] failed to keep the peace and be of good behavior by assaulting [his girlfriend]."

The state recommended that Mr. Wiggins serve five of the seven and a half years then remaining on his suspended sentence, whereas defendant urged that the previously agreed upon six-month sentence be imposed. The prosecutor explained the deviation between the state's recommendation and its earlier agreement as follows:

"[T]he State offered six months, knowing that the complaining witness was going to be uncooperative. That was a pre-hearing wrap offer. Not only was it the record I looked at but the behavior when he came into the courtroom, the looks that he was giving to [the complaining witness], his behavior. The questions didn't really trouble me; it was the stares, if you will, and his inability to appreciate this was serious. And it just demonstrated he doesn't get it, and can't correct and conform his behavior and that's why I went up from the pre-hearing offer."

The hearing justice then reviewed defendant's extensive criminal record and accepted the state's recommendation, sentencing Mr. Wiggins to a term of five years to serve. The defendant subsequently filed a motion for reconsideration, which was denied, and defendant timely appealed.

On appeal, Mr. Wiggins does not challenge his status as a violator; rather, he contends that the hearing justice erred when he vacated, *sua sponte*, defendant's admission and chose to proceed with a full hearing. The defendant asserts that by vacating his admission after a six-month sentence had been pronounced, the hearing justice effectively placed him twice in jeopardy for the same offense. In addition, Mr. Wiggins assails the decision on procedural grounds, arguing the hearing justice either violated Rule 35 of the Superior Court Rules of Criminal Procedure when he increased the sentence, or violated Rule 60 of the Superior Court Rules of Civil Procedure when he set aside the original six-month sentence without the consent of the parties. Finally, defendant invokes the doctrine of collateral estoppel to support his contention that the hearing justice erred in "relitigating the issue of [d]efendant's violation of probation at a subsequent hearing."

### Standard of Review

■■■ It is well settled that "[t]his Court's 'review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005) (quoting *State v. Rioux*, 708 A.2d 895, 897 (R.I.1998)). We apply a *de novo* standard of review, however, to questions of law, as well as to mixed questions of fact and law that purportedly implicate a constitutional right. *See Carnevale v. Dupee*, 783 A.2d 404, 408

arising out of the same set of factual circumstances.'" *In re Rosalie H.*, 889 A.2d 199,

206 (R.I.2006) (quoting *Tona, Inc. v. Evans*, 590 A.2d 873, 875 (R.I.1991)).

(R.I.2001); *Foley v. Osborne Court Condominium,* 724 A.2d 436, 439 (R.I.1999).

### Discussion

All of Mr. Wiggins's claims of error presume that the hearing justice actually imposed and then vacated a final and binding sentence of six months before conducting a full hearing and ultimately meting out a sentence of five years to serve. Although that issue may offer fertile ground for debate, it is abundantly clear that we may only reach it and, by extension, defendant's allegations of error, if Mr. Wiggins raised before the hearing justice some specific objection to the vacation of his admission and subsequent violation hearing:

> "According to our well-settled 'raise or waive' rule, issues that were not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.' * * * Another basic rule of our appellate practice is that this court will not review objections that were not raised at trial. * * * 'Consequently, allegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level.'" *State v. Hallenbeck,* 878 A.2d 992, 1018 (R.I. 2005) (quoting *State v. Bettencourt,* 723 A.2d 1101, 1107–08 (R.I.1999)).

On appeal, Mr. Wiggins asserts boldly that "[t]he trial justice *sua sponte* vacated the Judgment of Conviction as a violator over the protest of defense counsel." Yet defendant fails to provide us with any reference to the hearing transcript that would substantiate this purported objection. Further, our own review of that transcript reveals that defendant's trial counsel failed to raise any objection whatsoever, much less an objection on the grounds of double jeopardy, Rule 35, Rule 60, or collateral estoppel, either when his client's admission was vacated or later that day at the violation hearing.

We do acknowledge that the vacation of Wiggins's admission was something of a thunderbolt, and that the sudden upheaval of a previously negotiated plea agreement undoubtedly caught all parties by surprise. Counsel, however, had ample opportunity to raise some objection during the full hearing that followed later that afternoon. Moreover, it is apparent from the record that during the interlude between the two hearings, counsel was joined by a second attorney from his office, who also participated in the afternoon proceedings.

Mr. Wiggins's trial counsel did engage in some discussion of the six-month sentence with the hearing justice, but the limited and somewhat cryptic exchange dealt mostly with conversations that apparently had taken place in chambers before the morning hearing had commenced. The hearing justice cut this colloquy short and directed counsel to "address the merits of the hearing." In response, defendant's counsel asserted that the state had not met its burden, and then offered the following:

> "Additionally, I would like to say that my client did earlier today admit to violation, and after that admission, prior to it being vacated, my client, through his unsophistication and meant no disrespect to the Court, asked some questions which he felt were appropriate that may have displeased the Court, and he apologizes for those comments, your Honor. I ask that you show leniency on him. Thank you."

Later, in closing, defendant's trial counsel asked only that "the previous six month sentence be imposed." It is well established that, aside from a very narrow exception, this Court will not indulge any

arguments on which the trial court had no opportunity to rule.[3] *See State v. Feliciano*, 901 A.2d 631, 647 (R.I.2006). For the purposes of preserving an issue for appeal, apologies and entreaties do not amount to specific objections.

It is true that Mr. Wiggins filed a motion to reconsider,[4] but even that post-hearing motion failed to identify any of the specific objections he now attempts to raise on appeal. The motion merely asked the court "to reconsider the sentence imposed," with no memorandum offered to support this generic request. Regardless, defendant has not appealed the denial of his motion to reconsider, nor does he claim that the motion in itself somehow preserved any of the specific allegations of error he now seeks to press on appeal.

Clearly, none of the theories the defendant presents before this Court arises from a novel rule of law. *See Feliciano*, 901 A.2d at 647. The manner in which the hearing justice vacated the defendant's admission may have been unorthodox and unanticipated, but neither of those circumstances rendered the appropriate objections unknowable at the time. *See id.* Consequently, in accordance with long-standing precedent, we decline to address the issues raised on appeal.

## Conclusion

Because we find that the defendant has failed to preserve any of his allegations of error for this Court's consideration, we

affirm the judgment of conviction and the sentence imposed. We remand the papers in the case to the Superior Court.

---

**3.** *State v. Feliciano*, 901 A.2d 631, 647 (R.I. 2006) elucidates the circumstances that allow for an exception to the "raise or waive" rule:

"This Court will review unpreserved assignments of error, as an exception to our raise-or-waive rule, when they implicate 'basic constitutional rights,' *State v. Donato*, 592 A.2d 140, 141 (R.I.1991), and further satisfy three conjunctive elements: 'First, the error complained of must consist of more than harmless error. Second, the record must

be sufficient to permit a determination of the issue. * * * Third, counsel's failure to raise the issue at trial must be due to the fact that the issue is based on a novel rule of law of which counsel could not reasonably have known at the time of trial.' *State v. Lynch*, 854 A.2d 1022, 1040 (R.I.2004) * * *."

**4.** We are hard-pressed to discern on what Rule of Procedure such a motion rests.