November 19, 2021

**Supreme Court**

No. 2019-74-C.A.

No. 2019-371-C.A.

(P2/92-2073A)

State                          :

    v.                          :

Lubens Bienaime.                          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                               :

Lubens Bienaime.                   :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.**  In these consolidated appeals, the defendant, Lubens Bienaime, appeals from (1) a Superior Court judgment of conviction for second-degree sexual assault following a 1993 jury trial in Superior Court, and (2) a 2019 Superior Court judgment adjudicating the defendant a probation violator for his failure to appear for execution of his sentence for that 1993 conviction.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that these appeals may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgments of the Superior Court.

- 1 -

## Facts and Procedural History

In July 1992, the state filed a criminal information in Providence County Superior Court charging defendant with second-degree sexual assault, in violation of G.L. 1956 § 11-37-4. Following a trial, a jury found defendant guilty of one count of second-degree sexual assault on March 16, 1993. The defendant filed a motion for new trial, and in April 1993, the trial justice denied defendant's motion.

The dates of June 25 and June 28, 1993, are critical to the facts that gave rise to these appeals. On each date, the trial justice held a hearing related to defendant's sentencing; however, the transcripts for those hearings were not included in the record transmitted to this Court on appeal. According to defendant, those transcripts were inadvertently destroyed. Nevertheless, we know the following from the pertinent docket entries and documents that are in the record.

On Friday, June 25, 1993, the trial justice held a sentencing hearing and sentenced defendant to ten years' imprisonment, with three years to serve and seven years suspended, with probation. On that same date, counsel for defendant filed a motion for defendant to be sentenced to home confinement, and also requested that execution of the sentence be continued until the following Monday. The court granted counsel's request for a continuance and scheduled the execution of sentence for Monday, June 28, 1993.

The parties agree that the trial justice released defendant on bail with the expectation that he would return the following Monday for execution of his sentence. However, defendant failed to appear on Monday, June 28, 1993, and the trial justice issued a warrant for his arrest. The trial justice also denied defendant's pending motion for home confinement.

The state moved on July 20, 1993, to default defendant's bail pursuant to Rule 46(g) of the Superior Court Rules of Criminal Procedure, alleging that the terms of defendant's bail were violated when he failed to appear for sentencing on June 28, 1993. The trial justice subsequently granted the state's motion for bail forfeiture, declaring defendant's bail forfeited. According to the trial court docket in this nearly thirty-year-old case, a clerk of the Superior Court entered a judgment of conviction and commitment on June 25, 1993. The judgment was dated June 28, 1993, and the trial justice signed it on July 29, 1993. That judgment erroneously indicated that the crime for which defendant was convicted was "seduction," rather than second-degree sexual assault. There also appears in the record a correct judgment dated July 20, 2018, reflecting the conviction for second-degree sexual assault and the resulting sentence. The defendant did not file a notice of appeal in 1993 from either the denial of the motion for a new trial or the conviction.

Almost twenty-five years later, in December 2017, defendant was arrested at John F. Kennedy Airport in New York while attempting to enter the country, and he was extradited to Rhode Island. A second trial justice ordered that defendant be held without bail, and, in June 2018, ordered defendant to begin serving the three-year unsuspended portion of his original ten-year sentence. The defendant filed a notice of appeal from his underlying conviction on July 5, 2018.

Meanwhile, on July 2, 2018, the state filed a notice of probation violation pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. The state alleged that defendant failed to comply with the probation condition that he "keep the peace and be of good behavior" when he failed to appear for execution of his sentence in 1993.

Over the course of two hearings in Superior Court, the trial justice heard the parties on the legal issue raised by defendant in opposition to the notice of probation violation; that is, whether defendant could be found to be a probation violator based on his failure to appear prior to execution of sentence. At the second hearing, held in February 2019, counsel for defendant agreed that, as a factual matter, defendant's conduct in failing to appear on June 28, 1993, constituted failure to keep the peace and be of good behavior; but defendant nevertheless argued that, as a matter of law, he could not be found to be a probation violator for that failure to appear. More specifically, defendant maintained that he was not on probation when he failed to

- 4 -

appear because his sentence had not yet begun. Alternatively, defendant argued that, even if the trial justice were to find that defendant was on probation on June 28, 1993, the state's Rule 32(f) notice of violation was untimely because defendant's probationary period would have expired in the intervening years.

The trial justice rejected defendant's legal arguments, finding that the Rule 32(f) notice was "a viable notice of violation" that was timely served after defendant reappeared in court, and that the probation period had not expired because a warrant for defendant's arrest had issued, tolling the probationary period. The trial justice determined that defendant had violated the terms and conditions of his probation, and therefore declared him a violator of the terms of that probation. The trial justice thereafter sentenced defendant to an additional three years' incarceration, lifting three years of his suspended sentence; the court entered a judgment of conviction reflecting the probation violation on April 10, 2019. On April 3, 2019, defendant had filed a premature but timely notice of appeal from the probation violation determination.

This Court consolidated the two appeals for briefing and argument. In appealing his underlying 1993 conviction for second-degree sexual assault, defendant assigns two errors. He alleges that the first trial justice erred (1) by admitting certain evidence contrary to Rule 801(d) of the Rhode Island Rules of

Evidence; and (2) by denying defendant's motion for new trial, based upon defendant's assertion that the guilty verdict was against the weight of the evidence.

In his appeal from the probation violation conviction, defendant reasserts arguments he made before the Superior Court in opposition to the notice of probation violation. He contends that he was not on probation when he failed to appear on June 28, 1993, and therefore he could not be in violation of probation for his conduct in failing to appear. Alternatively, defendant argues that, if his probationary period commenced in 1993, the state's Rule 32(f) notice, filed in 2018, was not timely.

## 1993 Conviction

Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure limits the time in which a criminal defendant may file a notice of appeal. Before we can consider defendant's substantive challenge to the 1993 conviction, we must first determine whether his appeal is timely.

Rule 4(b) provides that a defendant's notice of appeal in a criminal case "shall be filed with the clerk of the Superior Court within twenty (20) days after the entry of the judgment or order appealed from." Further, "[a] judgment or order is entered within the meaning of [Rule 4(b)] when it is entered in the trial court's docket." Art. I, Rule 4(b) of the Supreme Court Rules. This Court considers timeliness a "mandatory prerequisite for consideration by this Court of an appeal." *State v. Sostre*, 736 A.2d 95, 96 (R.I. 1999) (mem.); *see State v. Pena-Rojas*, 822 A.2d 921,

922-23 (R.I. 2003) ("Because [the] defendant failed to file the notice of appeal in a timely manner, we have no choice but to dismiss [the] defendant's appeal because he failed to invoke our jurisdiction within the time limits provided by law for doing so.").

The defendant maintains that his notice of appeal from his underlying conviction filed on July 5, 2018, was timely. We disagree. Rule 4(b) is unequivocal: A notice of appeal must be filed within twenty days after the entry of the judgment appealed from, and the appeal clock begins running from the date the judgment is entered in the trial court's docket. The docket in this matter reflects that a judgment of conviction following a jury trial was entered in the Superior Court on June 25, 1993. Because no notice of appeal was filed within twenty days after that date, defendant's 2018 appeal of the 1993 conviction was not timely. *See* Art. I, Rule 20(a) of the Supreme Court Rules.

The defendant sets forth several arguments as to why the 1993 judgment of conviction is not the operative document for the appeal clock. First, defendant emphasizes that the 1993 judgment was entered into the docket on June 25, 1993, but not signed by the trial justice until July 29, 1993. As discussed previously, however, Rule 4(b) clearly mandates that the date of entry in the trial court's docket controls. Moreover, defendant cites no legal authority for the proposition that such a delay either invalidates the judgment or tolls the appeal clock. Further, even if

July 29, 1993, were the operative date in this case, the result is the same—defendant filed his notice of appeal from his conviction twenty-five years too late.

Second, defendant contends that the 1993 judgment of conviction is not the operative document and is invalid because it erroneously lists the applicable charge as "seduction," a crime that no longer existed in this state in 1993. Although we have noted that the Superior Court record of this case is incomplete, it nevertheless does contain, among other items, the criminal information, the trial transcripts, and the transcript from the April 1993 hearing on defendant's motion for a new trial. In addition, as noted previously, a correct judgment reflecting the conviction for the crime of second-degree sexual assault was entered in the case in 2018. Our careful review of these documents reveals unequivocally that the crime with which defendant was charged, and for which he was convicted, was second-degree sexual assault.

Finally, defendant requests that this Court treat his appeal as a petition for certiorari so that we may address his substantive concerns relating to the underlying conviction. We decline this request. "In the absence of statutory jurisdiction, this [C]ourt has discretion in determining whether to grant petitions for certiorari." *Davis v. Rhode Island Board of Regents for Education*, 121 R.I. 473, 477, 399 A.2d 1247, 1249 (1979). "[W]hen the issue of whether to allow a petition for certiorari is addressed solely to the discretion of this [C]ourt, we shall not grant the petition

where there has been an unreasonable and unexplained delay in seeking relief." *Id.* at 476, 399 A.2d at 1249. "[W]e consider concurrently the length of the delay and the circumstances leading to the delay in deciding whether to grant a petition for certiorari." *Id.* at 477, 399 A.2d at 1249. Here, defendant's twenty-five-year absence from the jurisdiction following his conviction and the June 25, 1993 sentencing hearing was the sole cause of the delay in this case. That absence was solely the result of defendant's actions, and therefore we will not treat defendant's untimely appeal from that conviction as a petition for certiorari.

Based on the foregoing, defendant's appeal from his 1993 conviction is untimely and therefore is dismissed.

### Probation Violation

In challenging the trial court's authority to adjudge him a probation violator, defendant asserts he could not be a probation violator for failing to appear on June 28, 1993, because when he failed to appear, he was not yet serving his sentence and therefore was not yet on probation. The defendant maintains that his sentence was merely "announced" on June 25, 1993, and that "his sentence had yet to begin." As support for this argument, defendant emphasizes that he was released on bail following the June 25, 1993 hearing, and that the state subsequently filed a Rule 46(g) notice for bail forfeiture, rather than a notice of probation violation. In light of these assertions, we consider the following question: Where, after the defendant

has exercised his right of allocution, a trial justice pronounces sentence that includes a period of probation but stays execution of the incarcerative portion, has the trial justice imposed a sentence such that the conditions of the defendant's probation attach?

"This Court's review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." *State v. Chandler*, 225 A.3d 946, 947 (R.I. 2020) (brackets omitted) (quoting *State v. Wiggins*, 919 A.2d 987, 989 (R.I. 2007)). "We apply a *de novo* standard of review, however, to questions of law," *Wiggins*, 919 A.2d at 989, and "[i]n passing on a trial justice's ruling on statutory interpretation, we do so on a *de novo* basis." *State v. Marsich*, 10 A.3d 435, 440 (R.I. 2010). "When the statute expresses a clear and unambiguous meaning, the task of interpretation is at an end and this Court will apply the plain and ordinary meaning of the words set forth in the statute." *Id.* (brackets omitted) (quoting *State v. Smith*, 766 A.2d 913, 924 (R.I. 2001)). Additionally, we remain mindful that "[p]enal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed." *Smith*, 766 A.2d at 924 (quoting *State v. Bryant*, 670 A.2d 776, 779 (R.I. 1996)).

General Laws 1956 § 12-19-8(a) authorizes the Superior Court to "impose a sentence and suspend the execution of the sentence, in whole or in part, or place the defendant on probation without the imposition of a suspended sentence."

- 10 -

Section 12-19-9(a) permits the Superior Court to conduct a hearing to adjudicate a defendant a probation violator "[w]henever any person who has been placed on probation pursuant to § 12-[1]9-8 violates the terms and conditions of his or her probation[.]"

In *State v. Dantzler*, 690 A.2d 338 (R.I. 1997), we considered whether a defendant may be found to be in violation of the terms of probation prior to lawful release from incarceration. *Dantzler*, 690 A.2d at 339. We read §§ 12-19-8 and 12-19-9 together and concluded that the latter

> "clearly permits probation to be revoked *whenever* a defendant who has been sentenced to a term that includes any period of probation imposed pursuant to § 12-19-8 is found, after hearing, to have committed any act that constitutes a violation of the implied condition of good behavior that comes into existence at the very moment the sentence is imposed and which remains until expiration of the total term of the sentence." *Id.* at 340 (discussing § 12-19-9).

We have reaffirmed this principle, first articulated in *State v. Jacques*, 554 A.2d 193 (R.I. 1989), in various contexts. *See Jacques*, 554 A.2d at 193, 195 (affirming a finding of probation violation where the violative behavior occurred while the defendant was on parole and before his probationary period had commenced because "the implied condition of good behavior attached to the suspended sentence from the moment the sentence was incurred"); *State v. Barber*, 767 A.2d 78, 79 (R.I. 2001) (affirming a finding of probation violation where the

- 11 -

violative behavior occurred while the defendant was still serving his term of imprisonment under the reasoning of *Jacques*); *State v. Baton*, 688 A.2d 824, 825 (R.I. 1997) (same); *State v. Chu*, 615 A.2d 1023, 1024 (R.I. 1992) (mem.) (affirming a finding of probation violation where the violative behavior occurred while the defendant was on home confinement under the reasoning in *Jacques*).

The defendant attempts to distinguish his case from *Jacques*, *Dantzler*, and their progeny because the defendants in those cases were already serving their sentences at the time they were alleged to have violated the terms of their probation. However, in *State v. Price*, 820 A.2d 956 (R.I. 2003) (*Price I*), we held that the defendant could be deemed a probation violator for a sentence he was not yet serving. *Price I*, 820 A.2d at 972-73. The defendant in *Price*, convicted of criminal contempt and sentenced to serve a term of incarceration and probation consecutive to a sentence for extortion, was found to be in violation of his probation on the criminal contempt conviction, even though the violative behavior occurred while he was serving the sentence for extortion. *Id.* Relying on *Dantzler*, we stated that "[t]he implied condition of good behavior is immediately effective upon the imposition of the sentence. It does not accrue only upon expiration of a previous sentence to which the subject sentence is consecutive." *Id.* at 972 (citation omitted). We later reaffirmed this principle in the related case *Price v. Wall*, 31 A.3d 995 (R.I. 2011) (*Price II*), where we clearly stated, "[t]he implied condition of good behavior

- 12 -

attaches when a suspended sentence is pronounced[.]" *Price II*, 31 A.3d at 1003; *see Chandler*, 225 A.3d at 948 (reaffirming in a slightly different context the principle that the "implied condition of good behavior attaches when a suspended sentence is pronounced").

Our holdings interpreting *Dantzler* in both *Price I* and *Price II* are clear and control the disposition of this case. A sentence is "imposed" under *Dantzler* and § 12-19-9 when the sentence is pronounced. Even accepting defendant's characterization of the June 25, 1993 proceeding as the hearing at which the trial justice merely announced his sentence, defendant's implied probation condition to keep the peace and be of good behavior attached at that time. *See Price I*, 820 A.2d at 972-73; *Price II*, 31 A.3d at 1003.

Despite defendant's arguments to the contrary, it is of no consequence that defendant was released on bail following the June 25, 1993 sentencing hearing, and that the state thereafter filed a Rule 46(g) notice of bail forfeiture. The bail and probation systems are separate systems with separate statutory schemes and purposes. *Compare Mello v. Superior Court*, 117 R.I. 578, 582, 370 A.2d 1262, 1264 (1977) ("We have recognized that the primary purpose of bail is to ensure the defendant's presence at court.") *with State v. Campbell*, 833 A.2d 1228, 1233 (R.I. 2003) ("Probation is intended to serve a rehabilitative function by allowing a defendant the opportunity to show by his conduct that incarceration is no longer

- 13 -

necessary."). Moreover, the defendant cites to no legal authority in support of his contention that the terms of bail and the terms of probation are mutually exclusive. Although defendant was on bail when the court continued execution of his sentence on June 25, 1993, it remains that defendant was also subject to the implied condition of his newly imposed probation that he keep the peace and be of good behavior.

We turn to defendant's alternative argument, that the state's July 2, 2018 notice of violation of probation was untimely. The issue before us is whether the trial justice erred in determining that defendant's probationary period had not expired in the twenty-five years following the sentencing hearing. Under Rhode Island law, the Office of the Attorney General does not have an unlimited right to seek to have a probationer declared a violator. *See, e.g.*, *State v. Tavares*, 837 A.2d 730, 733 (R.I. 2003) ("The state's right to have a probationer declared a violator and sentenced to incarceration is neither absolute nor interminable."). The court imposes a time limitation to assure that a defendant will not have the threat of imprisonment "hanging over his head for the rest of his life." *Id.* (quoting *State v. Santos*, 498 A.2d 1024, 1026 (R.I. 1985)). Thus, "[a] state may not seek to violate a defendant after his or her probationary period has expired, unless the running of that period has been tolled." *Id.*

One event that tolls the running of the probationary period is the issuance of an arrest warrant prior to the expiration of the probationary period. *See Tavares*, 837

A.2d at 733. Where an arrest warrant issues, however, the state must show that it has made a "bona fide effort to serve the accused." *Id.* (quoting *Santos*, 498 A.2d at 1026). "If no action is taken or a diligent effort to serve the defendant is not made, the state is barred from bringing violation charges after the limitations period has run." *Santos*, 498 A.2d at 1026.

The defendant in the case at bar argues that the state has failed to demonstrate that it had made "even feeble efforts" to serve defendant with the arrest warrant issued on June 28, 1993, following his failure to appear. The defendant cites to *Tavares* in support of his assertion that the state could not allege a violation after 2003 because, according to defendant, the state made no showing that it "so much as knocked on [defendant's] door the day the warrant was issued." In asserting this argument, defendant attempts to minimize the similarities of his case to the circumstances in *State v. Taylor*, 111 R.I. 653, 306 A.2d 173 (1973), where, following the issuance of a warrant, the defendant left the State of Rhode Island, was hospitalized in Massachusetts, and spent time in Nevada and California. *See Taylor*, 111 R.I. at 656, 306 A.2d at 175. This Court concluded:

> "Taylor's departure from Rhode Island and his failure to make his whereabouts known made it impossible for the state to serve the capias within a reasonable time after its issuance. We cannot endorse the proposition that a defendant on a deferred sentence can put himself out of the court's reach by not being answerable to the capias, enjoy his freedom from sentence while the statute runs and when

finally located prohibit the court from examining his behavior during the time of his probation."[1] *Id.*

Here, *Taylor* is controlling, not *Tavares*, despite defendant's argument to the contrary. The second trial justice had before him a presentencing report and letters sent on defendant's behalf, all of which made clear that, following defendant's conviction then sentencing on June 25, 1993, he left the State of Rhode Island and went to Haiti to see his ill mother. This Court is not without sympathy for the difficulties that defendant faced in 1993. However, the fact remains that defendant made himself unavailable to the state through his own actions—leaving the country and failing to appear for execution of his sentence. As in *Taylor*, we conclude here that defendant made himself unanswerable to the state; he may not now "when finally located prohibit the court from examining his behavior during the time of his probation." *Taylor*, 111 R.I. at 656, 306 A.2d at 175.

The warrant for defendant's arrest, issued on June 28, 1993, tolled defendant's probationary period. The defendant reappeared before the Superior Court after authorities promptly executed the warrant and arrested defendant as he re-entered the country in December 2017. The warrant was soon thereafter canceled. Once defendant reappeared and the warrant was canceled, the state promptly filed a Rule

---

[1] The principles enunciated in *State v. Taylor*, 111 R.I. 653, 306 A.2d 173 (1973), were applied in the context of a deferred sentence. *Taylor*, 111 R.I. at 656, 306 A.2d at 175. We nevertheless applied *Taylor* to the probation context in *State v. Santos*, 498 A.2d 1024 (R.I. 1985).

32(f) notice of probation violation on July 2, 2018, well within the ten-year probationary period which had at that point resumed. *Cf. Tavares*, 837 A.2d at 734 (holding that the state could not pursue revocation of probation where the state filed a Rule 32(f) notice of violation during the probationary period but failed to promptly pursue a hearing after defendant reappeared in court and the tolling warrant was canceled). Accordingly, the state's Rule 32(f) notice was timely.

We hold that the conditions of the defendant's probation attached when the trial justice pronounced defendant's sentence on June 25, 1993. Therefore, the defendant was on probation on June 28, 1993, when he failed to appear before the Superior Court for execution of that previously announced sentence. Furthermore, the state's Rule 32(f) notice was timely, because the June 28, 1993 issuance of a warrant for the defendant's arrest tolled defendant's probationary period. For these reasons, the trial justice had the authority to adjudge the defendant a probation violator for his failure to appear for execution of his sentence on June 28, 1993.

## Conclusion

For the foregoing reasons, the judgments of the Superior Court are affirmed.



STATE OF RHODE ISLAND

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | State v. Lubens Bienaime. |
| **Case Number** | No. 2019-74-C.A.<br>No. 2019-371-C.A.<br>(P2/92-2073A) |
| **Date Opinion Filed** | November 19, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For State:<br><br>Mariana E. Ormonde<br>Department of Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Office of the Public Defender |